Number 151020, Carmen Garrett v. Southwestern Medical Clinic P. et al. Argument not to exceed 15 minutes per side. And Mr. Piper, you may proceed for the appellate. May it please the court, William Piper on behalf of the plaintiff appellant, Carmen Garrett. In this case, the district court committed a few crucial legal errors that unfairly prejudiced Ms. Garrett's ability to prove pretext and therefore race discrimination. The problem basically started with the district court's analysis of prima facie case. Now, normally a prima facie case is not onerous. And disparate treatment evidence is not required in order to prove a prima facie case. O'Connor v. Consolidated Coin Caterers, a case from the US Supreme Court that says that. I didn't argue that disparate treatment evidence should be used to prove a prima facie case. I was basically relying on the replacement element. And that's all the analysis that should have been required. Well, the district court, and I agree with its analysis, went through an extensive analysis and determined that Melanie Gardner and Shanna DeMuth were comparators and that we had established the prima facie case by disparate treatment evidence. And that's not a problem, necessarily. That's fine. I mean, that's just in addition to what I had argued. But the problem is, the court went on to state, when it goes to really the meat of the case, when a plaintiff admits the factual basis of the employer's reason for terminating her, she must introduce evidence beyond her prima facie case to show pretext. And it cited Houghton versus Orchard Automation, which is a case cited in the federal appendix in the Sixth Circuit. That is an incorrect statement of the law. Houghton, as a matter of fact, indicated that disparate treatment evidence is sufficient to establish a pretext. And we disagree with that. Is that the end of the case? Or do we then independently review whether there's sufficient evidence of pretext? Well, that's an excellent question. And obviously, I believe I'd rather have my case go back for trial and further proceedings. But probably, the court ought to send it back for the court to analyze whether the plaintiff's disparate treatment evidence that the court has already established, these are comparators, establishes pretext. If we didn't agree with that, we could rule against you and still reject that portion of the analysis that's flawed. It's a matter of procedure. Or what? I'm trying to get what your position is on that. Well, the problem is, and I think I understand the court's question, the problem is the court never analyzed whether the disparate treatment evidence by itself established pretext. And we do that on the de novo review or not? Why not? Well, I suppose you could on de novo review. Can you address that? Yes, well, I believe that the disparate treatment evidence does establish pretext. First of all, the court, I agree with the court's analysis. Comparators don't look that close, I guess is what I'm driving at. Well, I would say they are close. It does establish disparate treatment and pretext. First of all, Ms. Garrett was terminated basically for an attendance violation. And Shanna DeMuth had extensive attendance violations. She had 12, and termination is supposed to occur at 8. She had 12 in one period from 2011 to 2012. And she wasn't terminated after 9, 10, 11, 12. She was given a warning about it, and she was written up and given, I believe, a last chance agreement. Was she terminated eventually? Not by Ms. Hurley. Then the second occasion, she again, in another time frame from 2012 to 2013, exceeded the number of allowable absences. She got to 12 again when 8 is supposed to justify termination. And she wasn't terminated. It was only when an issue of a no-call, no-show came up with a different supervisor, a Sarah Kelly, that she was finally terminated. And not only that, Ms. DeMuth had extensive performance and conduct issues. When you compare it to Ms. Garrett, Ms. Garrett was rated as a solid performer. On two consecutive reviews, DeMuth was rated as needs improvement. So you have all these issues indicating that DeMuth, I haven't even got to Gardner, but DeMuth committed violations well beyond that Carmen Garrett did. And she wasn't terminated. So you have to ask this question, and I think a jury ought to be to determine this. If Ms. Garrett was white, would she have been terminated? And I'm basically saying, when you compare her conduct to that of DeMuth and Gardner, a reasonable jury could say, no, she was terminated because of a race. Now Gardner had up to 15 absences, when again, eight should have been sufficient for termination. Yet she was given warnings, several warnings, and was not terminated. Not only that, you have extensive performance and conduct issues, and you have resume fraud, which normally justifies termination of anyone. And yet she wasn't terminated for that. So there's a lot of evidence here that these individuals who were white, Ms. Hurley bent over backwards for them and didn't fire them. And she didn't do that with Ms. Garrett. What did the district court say about those comparators? Well, he indicated they were comparators, but he didn't go, and that was sufficient to establish a prima facie case. But he didn't go into the analysis of the pretext analysis, which is, does this establish a pretext? I believe it clearly does, but the court never reached that question, because it said you have to have more evidence beyond a prima facie case. And what the district court did was basically put the disparate treatment evidence, the comparative evidence, in a box over here, and put it in the prima facie case. And then left it there. It's almost like putting it in the trash, and then didn't. The district court says you can't do that. Correct. And the resource of Sanderson plumbing products from the US Supreme Court says disparate treatment evidence can be used to establish both a prima facie case and a pretext, and the court never got to that. That's not the only issue I'm raising, but I think that's the central issue in the case. Another issue is the double hearsay issue. The court called it hearsay. Now, what the issue in that case is, Lisa Doolin told my client, Ms. Garrett, that Hurley said that she and, she meaning Carmen Garrett, and Cicely Maben were two inappropriate blacks that should not be working together. The defendant argued that was double hearsay, should not be considered. I cited two cases to the court, one from the Sixth Circuit, which was Carter versus the University of Toledo, that I think strongly support the idea that the statement should have been admitted, and not hearsay. In Carter versus the University of Toledo, the statement, again, a discrimination case, was the vice provost telling the. Counsel, before you go into the explanation of the case, you say that it is not hearsay. So clearly, it's not a court statement, but how do you bring it in under a non-hearsay rule? What's the rationale? What's the rule that gets this statement into court? And for what purpose? Well, let me address the second issue first. The purpose is to show additional evidence of pretext, because what it shows is that Hurley is biased. That's a biased statement. And that's also an issue, correct? Isn't that the ultimate issue? Yes, that's the ultimate issue, is whether she was discriminated against because of her race. OK, so your next argument? The next argument is that even though the defendant is arguing it's double hearsay, it can come in, as long as the statements are made in the course of employment. And the same arguments were made in the other two cases, Carter versus University of Toledo, and United States versus Portsmouth Paving Company. It, again, set up a double hearsay situation. And in those cases, the courts let in the evidence, because each of the statements is governed by an exception to the hearsay rule. So for that reason, these statements should have come in as well. And again, I was about to say, the statement in Carter versus University of Toledo was that the vice provost told the plaintiff that the dean was a racist. And it's the same sort of alleged double hearsay setup that is involved in this case. And in that case, the court said that it comes in, because it was made in the course of employment. There was an argument in that situation about being an agent of that, the vice provost being an agent of whoever it was. University of Toledo, yeah. But in this case, the district court said, well, it shouldn't come in, because Lisa Doolin, declaring a question, didn't make it during the course of employment. I disagree with that. The course of employment isn't just drawing blood and things of that nature. Everyone, as I argued in my brief, has an interest in working in a non-discriminatory work environment. The fact that Lisa Doolin told Ms. Garrett, the person being discriminated against, that these statements were made, I think, is in the course of employment. And that's my argument about that. The final issue, and I want to get to that before my argument concludes here, is that the court applied the same actor inference to basically weaken the plaintiff's prenuphagia case, which is already weakened, because it didn't apply the disparate treatment evidence. But to further weaken the plaintiff's pretext issue. But didn't they hold that it was flatly dispositive, just took it into account? Yeah, but when you take it into account, and then you indicate you're weakening the plaintiff's evidence as a result of that, that's where I think the error comes in, because United States Supreme Court can only take it into account to strengthen the point of taking it into account is to weaken the plaintiff's argument. I understand. It's kind of a circular argument there. I understand that. But on the other hand, what I would argue is that the same actor inference may be a jury issue that the jury can make an inference from. But at the summary judgment stage, the rule from the United States Supreme Court in every case we've ever reviewed on summary judgment, all inferences should be taken in favor of the non-moving party. And if you're making inferences against the non-moving party, that's improper at the summary judgment stage. And I think that's what Wexler holds, a case from the Sixth Circuit. But if you're applying the inference. You can't look at that at all at the summary judgment stage, have we? I'm sorry? The Sixth Circuit has not held. In fact, I think it's held to the contrary, that we can, at least for some purposes, look at the same actor inference at the summary judgment stage. It's not categorically excluded at the summary judgment stage. I understand. But if you read Wexler, Wexler makes several states. The Sixth Circuit has at least used it. Yeah, and I've cited another case that said it's totally improper. But Wexler does state that the idea that you apply the same actor inference does conflict with the United States Supreme Court cases that say all inferences should be made in favor of the non-moving party. So I understand the conundrum. And I have difficulty fighting out of that as well. It's a little bit confusing. But if you apply it to weaken the plaintiff's evidence, I think it is a problem. And therefore, the application of the same actor inference to weaken what was already improperly weakened, as far as the pretext evidence the plaintiff has established, is another reason why this case ought to be reversed. Thank you, counsel. Thank you. Your Honors, Joe Bogan on behalf of the defendants. The primary problem with the plaintiff's case is that the plaintiff is asking this court to do what it has repeatedly said it won't do. And that's to sit as a super-personnel department. You would agree that the district court was incorrect with respect to the statement that it can't look at anything in the third stage of McDonnell Douglas that it's already looked at it in the first stage? I don't think that I've read Judge Maloney's decision, again, on the plane down here. And I don't remember him saying that. I think a fair reading of his. I'm not asking whether he said it. I'm asking whether it's wrong if he said it. If he said that, that would be incorrect. There's language which admits of that, at least. Well, I think a fair reading of his opinion is the comparator evidence is enough to establish a prima facie case. But when I look at all the other evidence in the case, it ain't enough to establish pretext. I think that's a fair reading of his opinion. If that's OK. But I'm asking you to assume for the moment that he's saying I can't look at it if I looked at it before. You agree that's wrong? Yeah, you can look. So now we're basically on the same legal sheet of music that your opponent's on. Fair enough, yeah. You can look. How do you deal with the comparators that he argues? Well, that's a great question. And I think the problem is that if you look at the comparator evidence and you analyze it critically, it just doesn't support the plaintiff's position. Can you explain why? Sure. It's illustrated by the chart, Your Honor. If you look at the chart we attached to our brief, that's a comparator chart. And what it is, it's a list of offenses that were committed by Ms. Garrett as compared to the list of offenses committed by Jody Hobson, Lisa Doolin. What page is that? It's document 25, page 54. Wait a minute. We're in the Garrett case? Yes. That's the bottom side brief, right? You're the Applees brief, right? Yes, Your Honor. Mine goes up to page 42. I'm not that eager to look at it, but that's what you're relying on right now. That's right. And I have an extra copy if the court would like to take a look at it. Oh, it's in the appendix to the brief? It's in the appendix to the brief, yes. If you look at that, as I say, it's a list of offenses that the plaintiff committed versus the offenses that Gardner and DeMuth committed. And what you see if you look at that, there are a lot of differences between the plaintiff's disciplinary record and the disciplinary record of the people that she's trying to compare herself to. The first thing you notice is that the list of offenses committed by Ms. Garrett is longer than the list of offenses committed by the comparators. And it's a lot longer than the list of offenses by Hobson and Doolin. And I know it's not a numbers game, but what the plaintiff is saying here is that Ms. Hurley, the decision maker, was slow to pull the trigger when it came to DeMuth and Gardner, but was quick to pull the trigger when it came to Carmen Garrett. And if you look at that chart, that just doesn't, that's just not true. She was just as slow pulling the trigger on Ms. Garrett as she was with respect to the other two. The other thing you'll notice. 245 of your brief, I'm looking at this chart, appears to be. Yeah, I don't, for some reason, when I downloaded it, it showed that it was that page. That's the chart, OK, I got it. You're just saying it's longer over here under. Yeah, I mean, that's just one difference. That's one difference. The list is longer, and it just proves that she was not quick to pull the trigger on Ms. Garrett as plaintiff claims. The other thing you'll notice, Your Honor, if you look at that comparison chart, that Ms. Garrett did a lot of things that Ms. Gardner and Ms. DeMuth did not do. For instance, January 2, 2010, a patient complaint. She was wheeling a patient back to the x-ray room, banged a guy into the wall, and then was rude to him when they got to the x-ray area. And the patient complained. That doesn't apply to Gardner or DeMuth. June 3, 2010, a drug-alcohol agreement. The plaintiff had alcohol issues, and she had been convicted twice of drunk driving. And as a result of that, she was required to enter into an alcohol-drug agreement. That doesn't apply to Gardner or DeMuth. December 16, 2011, verbal counseling regarding the daily task list. She worked at night, so she had a lot of downtime. So they gave her a list of tasks that she had to perform nightly. She just didn't do it. That doesn't apply to Gardner, doesn't apply to DeMuth. Rude phone behavior. One of the providers called, and Ms. Garrett was very rude to her on the telephone. And the provider complained to Marilyn Hurley. That doesn't apply to Gardner, doesn't apply to DeMuth. June 5, 2012, written warning with suspension regarding HIPAA violation. That was a very, very serious situation. Ms. Garrett left her computer unattended, and as a result, somebody hacked into the system and viewed a confidential patient record. That's a HIPAA violation. That was a huge, huge and serious situation. That doesn't apply to Gardner, doesn't apply to DeMuth. And then June 13, 2012, discharge for failure to show for work. This was just a few days after she had been put on final warning, said, Carmen, this is it. No more screw-ups. Within just a few days after that, she signed up to take somebody's shift and then just didn't show up for work. And they got about an hour in the shift, and her co-worker calls and says, where are you? You're supposed to be here. Well, I forgot, and she was cooking dinner for her family. That's while she's on final warning, on final warning. That doesn't apply to Gardner. It doesn't apply to DeMuth. And that's important, because in the Mitchell case, Mitchell versus Toledo Hospital, this court said that to be similarly situated, you must have engaged in the same conduct, the same conduct. And clearly, that's not the situation here. A couple other notes on this comparison chart. You'll see Garrett's job duties were different than Gardner's job duties and DeMuth's job duties. Garrett was an x-ray tech. This chart is in the nature of your briefing that refers to stuff in the record. Yes, it is. It's not some chart that was in the record. No, and you'll see, for every one of those entries, it's attached to an exhibit, an actual exhibit. So I would say, she's an x-ray tech. These other ladies are phlebotomists. And that's important, because some of Garrett's performance problems were unique to her job. For instance, not doing the daily task list. That was unique to her job. So you can't compare her performance to Gardner or DeMuth. Another thing you'll notice here is there was only one other person that committed a HIPAA violation. And that was Lisa Doolin. If you look over in the Lisa Doolin column, June 5, 2012, written warning suspension HIPAA. And Ms. Doolin is Caucasian. She committed a HIPAA violation, and she got the exact same penalty as the plaintiff did, exactly the same. Another point on the comparison chart is that, when you look at the jury be making this comparison, or should we be making this comparison? Like in all Rule 56 cases, the question is, based on this record, based on this record, could a reasonable juror find in favor of the plaintiff? And what Judge Maloney said is, no. I mean, looking at all the evidence, no reasonable juror could find it. That's basically the issue we have before us. That is. That is. Could a reasonable juror find in favor of plaintiff? And the other point I wanted to make is, if you look at this chart, when Gardner and DeMuth make mistakes, they're counseled. They're written up. I mean, DeMuth, as you noted, was fired. And Gardner was on her way out the door when she decided to quit. So it's not like they're getting a free pass. When they do things wrong, they get disciplined, just like the plaintiff did. Ms. Garrett says, well, Gardner and DeMuth got a lot of breaks. Ms. Garrett got a lot of breaks, too. In the fall of 2011, she had a horrible string of tardiness. And Hurley said, you've got to get that straightened up or your job's in jeopardy. Within 30 days, she was late four more times. Right after that, she wasn't fired. The HIPAA violation, I mean, when you take into consideration all the stuff she had done before the HIPAA violation, the HIPAA violation should have resulted in termination. It didn't. Gave her a break. Gave her a final warning. A lot of times, in contrast to Gardner and DeMuth, who got written warnings, there were a lot of times where Ms. Garrett just got verbal counseling. So again, this doesn't show that the- Didn't really violate HIPAA. She just was careless in a way that allowed it possibly to get violated in the future. Yeah, you're right. You're right. What she did- Harsh to say a huge, huge HIPAA violation when somebody just left their computer on. I know they shouldn't leave it on, but it doesn't mean that somebody's privacy was actually invaded. Well, no. Privacy was invaded. That's the point. And that's what Judge Maloney said. And you're right. The violation was she violated computer protocol, which resulted in a HIPAA violation. That's what happened. And the same thing with Doolin. But there was a breach of privacy. There was a breach of privacy, a serious breach of privacy caused by her violation of the computer protocol. So my point is this. Oh, one other thing. If you look at Mabin, Cicely Mabin, she's the other African-American. There's another lawsuit by Ms. Mabin that was also dismissed on summary judgment. If you look at her list, she committed 11 disciplinary offenses before she was let go, as compared to Gardner, who was no longer there and had six, and DeMuth, who was terminated after seven. So again, if Marilyn was slow to pull the trigger, it's clear that it was not because of race. She gave Ms. Mabin a lot more chances than she gave Shannon DeMuth or Melanie Gardner. So again, the point is that the comparator evidence really just doesn't support the plaintiff's position. Was it enough to make out a prima facie case? I would argue no, and that's what I argued to Judge Maloney. Judge Maloney said, no, it's enough to make out a prima facie case, but it's not enough to establish a pretext, especially when you look at all the other evidence. And that would be my final point. In deciding a summary judgment motion in a case like this, obviously, it's relevant to look at the comparator evidence. It is, but you've got to analyze it critically, like I say. But you don't just look at the comparator evidence. On Rule 56, you look at all the other evidence. And in this case, we've got a lot of evidence that is simply inconsistent with a finding of discrimination. First of all, the person who made the termination decision, Marilyn Hurley, is the same person that made the hiring decision. And it doesn't make sense that you would hire somebody knowing they're African-American and then turn around and fire them because they're African-American. That's the same accurate inference. Marilyn Hurley has hired a number of African-American employees. Garrett testified that there were like 60 people working there at the time. Seven of them were African-American. So it was about 11% of the population there was African-American. That's a pretty high percentage for that particular community. Marilyn Hurley hired, on one occasion, she hired an African-American to replace a Caucasian. Marilyn Hurley actually started her career as a nurse. When she got out of nursing school, she took a job in Benton Harbor. Benton Harbor has got a high African-American population. She went to Benton Harbor. She started her career there because she wanted to serve the minority community. We have affidavits by two of her African-American colleagues, Patricia Greer, Regina Patrick. They know Marilyn Hurley. And they said, we know her. We work with her. She's a good lady. She's good to work with. She's approachable. And she is not. It just seems like that's such jury kind of evidence that you're giving us now. Well, again, I like thinking in terms of a scale. When you pile all that evidence up, when you pile all that evidence up, could any reasonable juror? And again, I understand that's the question. When you put all this evidence together, could a reasonable juror find in favor of the plaintiff? And Judge Maloney said, no, you just can't. So counsel, if you, tagging on to Judge Rogers' question, how does all that square with the notion that we as judges are not to weigh the evidence at the summary judgment stage? That the real issue for us is whether or not there is this genuine issue of fact, genuine issue of fact as to this material evidence. And so how do you square those two things? Well, it's the same in any Rule 56 motion. Obviously, motivation is a question of fact. I don't dispute that motivation is a question of fact. But you're still left with the Rule 56 analysis, which requires you to look at the evidence to see if, in the words of the Supreme Court, whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided, so one-sided, that one party must prevail as a matter of law. And that's the situation we have here. As I say, the comparator evidence really doesn't support the plaintiff's case. All the other evidence is the other way. So this is a case where the district court concluded, correctly, I believe, that the evidence is so one-sided that it's not appropriate for this case to go to a jury. And this court, as have other courts, repeatedly grant a summary judgment in employment discrimination cases, even though the fundamental issue is motivation.  Thank you. You're welcome. I have to emphasize again that Ms. Garrett was terminated for attendance violations. But she never reached the eight-point stage that's required under the policy for termination for attendance. The other two people that I've advanced as comparators, DeMuth. Well, she really terminated for attendance? I mean, isn't there evidence that there was progressive discipline all along? Well, the last issue was attendance. OK, the last. And that's what they said the term was. Came right after the HIPAA. Yes, they're arguing that it is an accumulation. However, the last issue was attendance. I'm also arguing the other people had an accumulation of many, many issues well beyond what Ms. Garrett did. I believe the HIPAA warning was a problem itself that indicates discrimination also. The evidence indicates that Doolin wasn't, although given a warning, she wasn't told, unlike Ms. Garrett, that anything else is going to result in termination. Another difference. I don't know how the defendant can argue around the fact that the district judge found that DeMuth and Gardner were comparators. It went into an extensive analysis of that and found that they were comparators. That's a jury issue. I agree with its comparator conclusion. The problem, as I've indicated in the brief, is that it should have applied it then to, that's district treatment evidence, it should have applied it to the pretext analysis. It never did. I think it's easily sufficient when you combine it with all the other evidence plus the excluded hearsay evidence and things to bring it to a jury. This may be not a fair question, but he focused a lot of his argument on this chart in his brief, which is kind of in micro print and it's a little bit hard for me to capture. But I assume you were kind of tracking along. Are there parts of that that are just flat out wrong or incomplete? I'm not asking you to bless it, but can you point to parts of that? Yeah, and I'm sorry, Your Honor, I didn't focus on his chart. It was never part of the record in the case. Well, it's in the brief, sort of at the end. OK, all right, that's fair. Thank you. Yeah, I mean, I basically, you know, he sets forth, well, look at all these things that they've done. I also say, look at all those things that the other people did. I just thought it might be handy for you to say, oh, well, this leaves out x. Oh, yeah, bottom line is my argument is not only were there attendance issues that were beyond the pale for the other two, but they also engaged in performance and convict issues that I think went well beyond what Ms. Garrett did. And the court found the other two were comparators. You find that someone's a comparator and then still come to the conclusion that there's not enough evidence to overcome the legitimate basis of the stage of the argument. It sounds like you're trying to argue the flip side. If they have a prima facie case, they win. No, that's not what I'm arguing. If they have a prima facie case based on comparators, they can still lose, even if you're still arguing competitors, because the standard's a little different. Well, the case law from the United States Supreme Court and the Houghton case, which, ironically, the district court cited as a reason not to look at disparate treatment in the pretext phase, say that district pretreatment evidence can be sufficient to establish pretext. Can be. Of course it can be. The court never engaged in that analysis. And I would say that you seem to be saying once it can be, he's a comparator, and therefore it is. Well, that's not really what I'm saying. What I'm saying is there's plenty of disparate treatment evidence. I don't think the court would have made the analysis and actually found that these two people were comparators if there wasn't enough evidence to go to a jury on the issue of comparison. And the jury could determine, based on the disparate treatment evidence, that there was discrimination, that the reason given was a pretext. And I think the evidence is really, really extensive. And the record is completely there. I was expecting that. Thank you very much. Thank you. The case will be submitted. I appreciate your advocacy. Please call the next case.